UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMES HUTCHINS,<br><br>    Plaintiff,<br><br>v.<br><br>BANK OF AMERICA, N.A.,<br><br>    Defendant. | Case No.  13-cv-03242-JCS<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS**<br><br>**Dkt. No. 12** |

## I.  INTRODUCTION

Plaintiff James Hutchins, proceeding *pro se*, filed this action against Defendant Bank of America, N.A. ("Bank of America"), alleging fourteen claims: (1) fraud; (2) wrongful foreclosure; (3) violations of California Business and Professions Code §§ 17200 *et seq*.; (4) violation of California Civil Code § 2923.5; (5) intentional infliction of emotional distress; (6) negligent infliction of emotional distress; (7) defamation; (8) violation of Real Estate Settlement Procedures Act; (9) conversion; (10) quiet title; (11) injunctive relief; (12) rescission of loan contract; (13) violation of the Fair Credit Reporting Act; and (14) violation of the California Rosenthal Fair Debt Collection Practices Act.  Bank of America filed a Motion to Dismiss ("Motion"), and contends the Complaint fails to state any claim for relief.  The Court held a hearing on the Motion on October 4, 2013, at 1:30 p.m.  For the reasons stated below, Defendant's Motion is GRANTED in part and DENIED in part and the Complaint is DISMISSED WITH LEAVE TO AMEND.

## II.  BACKGROUND

### A.  Factual Allegations

#### 1.  *Loan Origination*

On July 17, 2004, Plaintiff Hutchins, a resident of the County of Alameda, submitted a

United States District Court<br>Northern District of California

1   residential mortgage loan application to Defendant Bank of America.  *Id.* ¶ 13.  The resulting loan

2   was secured by a Deed of Trust on the property known as 1863 Altair Avenue, Livermore

3   California 94550 (hereafter "the Property").  Dkt. No. 13 (Request for Judicial Notice in Support

4   of Defendant Bank of America, N.A.'s Motion to Dismiss Plaintiff's Complaint) ("RJN"), Ex. A

5   (Deed of Trust).[1]

6        Plaintiff alleges that in the loan application, Plaintiff stated that he had Total Assets in the

7   amount of $213,000 and Net Worth in the amount of $23,070.  *Id.*  On July 20, 2004, Defendant

8   informed Plaintiff that he qualified for a 5/30 Interest Only ARM loan, which was the "best" loan

9   for which Plaintiff was qualified.  *Id.* ¶ 14.  Plaintiff was told that he did not qualify for a fixed

10  rate loan.  *Id.*

11       Defendants scheduled the signing for the closing of the loan at 4:00 p.m. on Friday, August

12  6, 2004.  *Id.* ¶ 15.  When Plaintiff arrived for the appointment, Defendants informed Plaintiff that

13  the Title Company's office would be closing soon and the documents must be signed quickly.  *Id.*

14  ¶ 16.  Defendants also told Plaintiff if he did not sign the documents that day, the loan approval

15  would expire and the loan application process would have to be reinitiated.  *Id.*  The documents

16  presented to Plaintiff for review totaled more than 200 pages.  *Id.*

17       Unbeknownst to Plaintiff at the time, and without Plaintiff's permission, Plaintiff's loan

18  application was modified by Defendants to represent that Plaintiff's Total Assets were $1,412,165,

19  and Plaintiff's Net Worth as $1,222,235.  *Id.* ¶ 17.  Plaintiff did not discover this modification

20  until September of 2011, under circumstances described below.

21              **2.    *Plaintiff's Application for Loan Modification***

22       In 2008, Plaintiff began to have concerns regarding his ability to make his loan payments

23  as the first amortization approached, and called Bank of America to see what options were

24  available for loan modification.  *Id.* ¶ 18.  Defendant told Plaintiff that loan modifications were

25  only available to delinquent borrowers, but told him to periodically call back, as new options for

26

27       [1]  The Court grants Defendant's request for judicial notice of publically filed documents.
28  *Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001) ("under Fed.R.Evid. 201, a court
    may take judicial notice of matters of public record.") (quotations omitted).

distressed borrowers may be approved. *Id.*

As instructed, Plaintiff called Bank of America periodically to inquire about options for modifying his loan. *Id.* ¶ 19. On May 11, 2009, a representative of Bank of America faxed Plaintiff an application for loan modification, but informed Plaintiff that he was not eligible to apply because he was not behind on any loan payments. *Id.* ¶ 19. Plaintiff submitted the completed application for loan modification on July 3, 2009, and Bank of America sent Plaintiff a letter acknowledging receipt that same day. *Id.*

On July 6, 2009, Plaintiff called Bank of America to inquire about his application. A representative informed Plaintiff that the "investor" for the loan's note required the account to be 90 days late before the borrower could be eligible for a loan modification. *Id.* ¶ 21. Plaintiff alleges that a representative of Bank of America "instructed Plaintiff to stop making the loan's monthly payments in order to cause the loan to become late and therefore eligible for the loan modification." *Id.* Plaintiff alleges that "[t]he representative informed Plaintiff that while the loan modification application was in progress, no derogatory information would be reported to the credit reporting agencies." *Id.* As instructed, Plaintiff stopped making monthly payments starting August of 2009. *Id.* ¶ 22.

Plaintiff continued to call Bank of America to inquire about the status of his application. *Id.* ¶ 23. At Bank of America's request, Plaintiff submitted updated financial information on November 3, 2009. *Id.* On January 5, 2010, when calling to check on the status of his application, Plaintiff was informed that his application had been denied. *Id.* ¶ 24. When discussing the rejection of his application, Plaintiff discovered that the financial information Plaintiff had provided had been incorrectly entered into the Bank of America computer system, significantly overstating Plaintiff's credit liabilities, causing the application to be rejected. *Id.* Plaintiff verbally worked with the representative from Bank of America to correct the financial information and reactivate the application. *Id.*

Plaintiff continued to call Bank of America to check on the status of the loan modification application. *Id.* ¶ 25. On March 2, 2010, Plaintiff was informed that he had been "tentatively approved" for loan modification, but the application was being sent to an outside evaluator to

3

determine which specific loan modification programs Plaintiff was qualified for. *Id.* On

November 1, 2010, Plaintiff received another letter from Bank of America "acknowledging that a

loan modification had been received and was in process." *Id.* ¶ 27.

Plaintiff called Bank of America on March 20, 2011, and discussed with Defendant's

representative that on January 5, 2010, he was informed that his loan modification application had

been rejected, but that he never received any notification from Defendants that the application had

been denied. *Id.* ¶ 28. Defendant's representative assured Plaintiff that if the application had been

denied, Plaintiff would be notified by mail and the denial would be included in Plaintiff's file. *Id.*

The representative also informed Plaintiff that denial was very unlikely because his application

had already been tentatively approved. *Id.*

### 3.   *Plaintiff's Requests for Accounting*

In 2011, Bank of America sent Plaintiff several monthly statements regarding the status of

the loan. These monthly statements contained inconsistent "past due" amounts. *Id.* ¶ 29. The

statement dated March 30, 2011 indicated that the past due amount was $96,527.48. *Id.* The

statement dated April 28, 2011 indicated that the past due amount was $1,331.80. *Id.* The

statement dated May 27, 2011 indicated that the past due amount was $6,136.12. *Id.*

In response to the discrepancies in the past due amounts, Plaintiff sent a Qualified Written

Request ("QWR") to Bank of America by certified mail on June 25, 2011. *Id.* ¶ 30. Bank of

America sent Plaintiff a letter dated July 12, 2011 that included a "loan history statement." *Id.*

The letter indicated that the loan history statement "provides a detailed outline of transactions for

the above-referenced loan" including a history of payments, servicing expenses paid to third

parties, tax and insurance payments paid on Plaintiff's behalf, and any late charges assessed and

paid. *Id.* The loan history statement was dated January 1, 2006 to July of 2011, but the last entry

was dated August 14, 2009. There were no late charges after August 14, 2009. *Id.* Bank of

America also sent Plaintiff a letter dated July 19, 2011, which enclosed copies of the Deed of

Trust, the Adjustable Rate Rider, the Adjustable Rate Note, and the Final Settlement Statement.

*Id.* ¶ 32.

On September 1, 2011, Plaintiff sent Bank of America a "Tort Letter" by certified mail

4

United States District Court
Northern District of California

1    stating that Plaintiff had not received an adequate response to his QWR.  *Id.* ¶ 33.  In response,

2    Defendant sent Plaintiff a letter dated September 14, 2011 that included a loan history statement

3    "identical to the one Defendant sent on July 12, 2011."  *Id.* ¶ 34.  Defendant also sent Plaintiff a

4    letter dated September 15, 2011 which was "essentially identical" to the letter dated July 19, 2011.

5    This letter similarly contained copies of the Deed of Trust, Adjustable Rate Rider, Adjustable Rate

6    Note, and Final Settlement Statement.  *Id.*

7         Defendant also sent Plaintiff a letter dated October 11, 2011.  *Id.* ¶ 35.  According to the

8    Complaint, this letter stated:

9              We have reviewed the loan files again and determined that there is
10             no legal basis for rescission at the time.  Furthermore, Bank of
               America, N.A. met its statutory obligations in its initial response to
11             your rescission claim.  In addition, because the subject loan closed
               on or about July 2004, any extended right to rescind, even if
12             applicable, has expired pursuant to TILA.  As such, your second
               demand for rescission is also denied and this matter remains closed.

13   *Id.*

14        Plaintiff alleges that he has continued to receive monthly statements from Bank of America

15   regarding the status of his loan, which continues to reflect inconsistent past due amounts.  For

16   instance, Plaintiff alleges he received a statement from Bank of America dated February 28, 2012

17   which indicated that the past due amount was $48,192.40.  *Id.* ¶ 37.  Plaintiff alleges that he

18   received a statement dated March 29, 2011 that stated the past due amount was $152,760.20.  *Id.*

19             **4.    *Plaintiff's Discovery of Defendant's Modification of his Total Assets and
20                      Net Worth on the Original Loan Application***

21        Plaintiff alleges that, following receipt of Defendant's "loan history statement" dated

22   September 14, 2011, Plaintiff reviewed all documents relating to the loan.  *Id.* ¶ 36.  At this time,

23   Plaintiff discovered that "while Plaintiff had stated on the loan application Total Assets of

24   $213,000 and Net Worth of $23,070, the copy of the loan application included amount the closing

25   documents listed Plaintiff's Total Assets as $1,412,165 and Net Worth as $1,222,235."  *Id.*

26   Plaintiff alleges that he had no knowledge of and had never authorized this change.  Plaintiff does

27   not state where he obtained a copy of the loan application to discover this information.

28   //

### 5. *Plaintiff's Credit Report and "Letter of Dispute"*

On April 4, 2012, Plaintiff was let go by his employer, Sandia National Laboratories. *Id.* ¶ 38. Plaintiff alleges that issues involving Plaintiff's credit report and status were cited as concerns regarding Plaintiff's ability to maintain his U.S. Government security clearance. *Id.*

On May 14, 2012, Plaintiff sent Bank of America a "Letter of Dispute" regarding his loan. *Id.* ¶ 39. On September 9, 2012, Plaintiff also sent a letter of dispute to each of the three credit reporting agencies: Experian, Equifax and TransUnion. *Id.* Plaintiff alleges that he "received a response stating that an investigation had been conducted and they had verified that the information had been reported correctly." *Id.*

### 6. *Notice of Default*

Plaintiff received a letter dated May 9, 2013 informing Plaintiff that Defendant had filed a Notice of Default. *Id.* ¶ 41. Plaintiff was later informed that the Notice of Default was officially recorded on May 13, 2013. *Id.*; *see also* RJN, Ex. C (Notice of Default and Election to Sell Under Deed of Trust).

### 7. *Plaintiff's Further Requests for Loan Modification*

On May 17, 2013, Plaintiff called Bank of America and inquired about the status of his application for loan modification "since Plaintiff had never received any notification about a determination." *Id.* ¶ 42. After investigating, a Bank of America representative informed Plaintiff that there was no record of Plaintiff ever having applied for a loan modification. *Id.* Plaintiff assured the representative that he had submitted an application, and that Bank of America confirmed receipt of the application in writing. *Id.* The represented invested further, and again told Plaintiff that there was no record of an application for loan modification. *Id.*

Plaintiff received a letter from Bank of America dated May 23, 2013, which states:

> Thank you for updating us about your situation as it pertains to your application for a loan modification. Under the guidelines of the program, your loan was determined to be ineligible for a modification based upon the information you provided and we closed the application.

*Id.* ¶ 43.

//

**B.      Plaintiff's Claims**

In the Complaint, Plaintiff alleges fourteen causes of action: (1) fraud; (2) wrongful foreclosure; (3) violations of California Business and Professions Code §§ 17200 *et seq*.; (4) violation of California Civil Code § 2923.5; (5) intentional infliction of emotional distress; (6) negligent infliction of emotional distress; (7) defamation; (8) violation of Real Estate Settlement Procedures Act; (9) conversion; (10) quiet title; (11) injunctive relief; (12) rescission of loan contract; (13) violation of the Fair Credit Reporting Act; and (14) violation of the California Rosenthal Fair Debt Collection Practices Act.

**C.      Defendant's Motion to Dismiss**

On August 21, 2013, Defendant filed a Motion to Dismiss Plaintiff's entire Complaint with prejudice. Dkt. No. 12 (Defendant Bank of America, N.A.'s Notice of Motion and Motion to Dismiss Plaintiff's Complaint; Memorandum of Points and Authorities in Support Thereof) ("Motion"). Defendant contends that Plaintiff's claims for fraud, intentional infliction of emotional distress, negligent infliction of emotional distress, and unfair business practices in violation of California's Business and Professions Code §§ 17200 *et seq*., are time-barred by their respective statutes of limitations. Defendant further argues that Plaintiff lacks standing to challenge the foreclosure proceedings because he does not allege that he is willing and able to tender the amount due on the loan. Defendant also argues that each of Plaintiff's fifteen causes of action fail for independent reasons discussed below.

**D.      Plaintiff's Opposition**

Plaintiff failed to file and serve a responsive brief to Defendant's Motion within fourteen days after the Motion was filed and served as required by Local Rule 7-3(a). On September 13, 2013, Plaintiff filed a response brief, in which he requests the Court to excuse his delay. Dkt. No. 17 (Plaintiff's Response to Defendant Bank of America, N.A.'s Notice of Motion and Motion to Dismiss Plaintiff's Complaint) ("Pl. Opp."). In light of Plaintiff's *pro se* status, the Court will consider the arguments in Plaintiff's response brief.

Plaintiff presents arguments in opposition to Defendant's Motions regarding several of his claims, which are discussed below. However, Plaintiff also concedes that his claim for quiet title

1    is insufficiently pled, and asks for leave to amend this claim.  Plaintiff further concedes that his

2    requests for an injunction and rescission of are not causes of action.

3    **III.    LEGAL STANDARD**

4           A complaint may be dismissed for failure to state a claim for which relief can be granted

5    under Rule 12(b)(6) of the Federal Rules of Civil Procedure.  Fed.R.Civ.P. 12(b)(6).  "The

6    purpose of a motion to dismiss under Rule 12(b)(6) is to test the legal sufficiency of the

7    complaint." *N. Star. Int'l v. Ariz. Corp. Comm'n*, 720 F.2d 578, 581 (9th Cir. 1983).  In ruling on

8    a motion to dismiss under Rule 12(b)(6), the Court takes "all allegations of material fact as true

9    and construe(s) them in the lights most favorable to the non-moving party." *Parks Sch. of Bus. v.*

10   *Symington*, 51 F.3d 1480, 1484 (9th Cir. 1990).  The complaint need not contain "detailed factual

11   allegations," but must allege facts sufficient to "state a claim to relief that is plausible on its face."

12   *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 547

13   (2007)).  This Court has a duty to interpret *pro se* pleadings liberally. *See Hughes v. Rowe,* 449

14   U.S. 5, 9 (1980); *Bernhardt v. Los Angeles Cnty.*, 339 F.3d 920, 925 (9th Cir. 2003).

15          "Dismissal with prejudice and without leave to amend is not appropriate unless it is clear

16   … that the complaint could not be saved by amendment." *Eminence Capital, LLC v. Aspeon, Inc.*,

17   316 F.3d 1048, 1052 (9th Cir. 2003).  However, "[l]eave to amend need not be granted when an

18   amendment would be futile." *In re Vantive Corp. Sec. Litig.*, 283 F.3d 1079, 1097 (9th Cir. 2002)

19   **IV.    DISCUSSION**

20          As a threshold matter, the Court notes that Plaintiff concedes that his "causes of action" for

21   an injunction and rescission of the mortgage do not constitute causes of action, but rather, are

22   remedies.  Plaintiff also concedes that his claim for quiet title is insufficiently pled, and asks for

23   leave to amend this claim.  Accordingly, the Court dismisses Plaintiff's quiet title claim with leave

24   to amend, and dismisses Plaintiff's injunction and rescission "causes of action" with prejudice.

25   The Court addresses each of Plaintiff's remaining eleven claims individually.

26          **A.    Fraud**

27          Plaintiff's claim for fraud encompasses two categories of allegations.  First, Plaintiff

28   alleges that in July of 2004, he submitted a loan application which indicated that the amount of his

United States District Court
Northern District of California

8

United States District Court
Northern District of California

1    Total Assets was $213,000 and the amount of his Net Worth as $23,070.  Compl. ¶ 13.  Plaintiff

2    alleges that, unbeknownst to him and without his permission, Defendant modified Plaintiff's loan

3    application to represent that Plaintiff's Total Assets were $1,412,165 and his Net Worth equal to

4    $1,222,235.  *Id*. ¶ 17; *see also id*. ¶ 45(f).  Plaintiff alleges that Defendant's modification caused

5    the loan underwriter to approve Plaintiff for a loan which Defendants knew or should have known

6    Plaintiff would not have qualified for had Plaintiff's true information as provided been utilized.

7    *Id*.

8          In Plaintiff's second category of allegations, he alleges that Defendant falsely represented

9    that its representatives "were experts in the field of mortgage lending, and that Bank of America

10   only offered loan products to those who would truly qualify."  *Id*. ¶ 45(a).  Plaintiff alleges that

11   Bank of America represented that they would give Plaintiff a loan "which was in his best interests

12   given his credit history and financial needs and limitations."  *Id*. ¶ 45(b).  Despite such

13   representations, Plaintiff alleges that Defendant gave him "inadequate and confusing information

14   relative to product choices, material loan terms and product risks, payment penalties," and failed

15   to disclose to Plaintiff "loan products that Plaintiff was approved for and which contained more

16   favorable terms."  *Id*. ¶ 45(c)-(d).

17         As a preliminary matter, the Court notes that this latter category of allegations does not

18   state a claim for fraud.  Statements that are "generalized, vague and unspecific assertions,

19   constituting mere 'puffery' upon which a reasonable consumer could not rely" are not actionable

20   in a claim for fraud.  *Glen Holly Entm't, Inc. v. Tektronix Inc.*, 343 F.3d 1000, 1015 *opinion*

21   *amended on denial of reh'g*, 352 F.3d 367 (9th Cir. 2003).  Thus, to the extent Plaintiff bases his

22   fraud claim on Defendant's statements that its representatives were "experts in the field of

23   mortgage lending" and would give Plaintiff a loan "in best interests," Plaintiff's fraud claim

24   fails.  Moreover, to the extent Plaintiff alleges fraud on the basis that Defendant told him that he

25   was given the loan with the most favorable terms, and failed to disclose loans with more favorable

26   terms, Plaintiff has failed to plead sufficient facts showing more favorable loans were in fact

27   available to show that Defendant's statements were indeed false.

28         On the other hand, Plaintiff's allegations regarding Defendant's alleged deliberate and

secret modification of his Total Assets and Net Worth on the loan application constitutes an allegation of actual fraud. *See* Cal. Civ. Code § 1572. Plaintiff sufficiently alleges the elements of a fraud claim, that is: "(a) misrepresentation (false representation, concealment or nondisclosure); (b) knowledge of falsity (or 'scienter'); (c) intent to defraud, i.e., to induce reliance; (d) justifiable reliance; and (e) resulting damage." *Philipson & Simon v. Gulsvig*, 154 Cal.App.4th 347, 363 (2007) (quotations omitted). The alleged modification of Plaintiff's loan application to cause the underwriter to approve a higher loan than Plaintiff could afford, in an effort to make Plaintiff default on the loan so Bank of America could foreclose on his home, constitutes fraud.

Defendant argues that Plaintiff fails to plead fraud with particularity as required by Rule 9(b) of the Federal Rules of Civil Procedure. A plaintiff alleging fraud must plead "the who, what, when, where, and how' of the misconduct charged." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003). The Court finds that Plaintiff has met this standard. Plaintiff alleges particular details of the Friday afternoon in which he signed the closing papers for his loan, and sufficiently explains why he was unable to review the allegedly fraudulent documents at that time. *See* Compl. ¶¶ 15-17.

Defendant also argues that Plaintiff's claim for fraud is time-barred. Claims for fraud are subject to a three-year statute of limitations. Cal. Civ. Proc. Code § 338(d). Plaintiff alleges the fraud occurred during loan origination in 2004, and filed the Complaint in this action in 2013. Plaintiff, however, argues that his fraud claim did not begin to accrue until September of 2011, when he first discovered that Defendant had modified the Total Asset and Net Worth amounts on his loan application. Indeed, § 338(d) provides that a cause of action for fraud "is not deemed to have accrued until the discovery, by the aggrieved party, of the facts constituting the fraud or mistake." *Id*.

Defendant argues, however, that Plaintiff does not plead sufficient facts to show that he was unable to discover the fraud at an earlier time despite reasonable diligence. Under California law, "[i]n order to adequately allege facts supporting a theory of delayed discovery, the plaintiff must plead that, despite diligent investigation of the circumstances of the injury, he or she could not have reasonably discovered facts supporting the cause of action within the applicable statute of

1    limitations period." *Fox v. Ethicon Endo-Surgery, Inc.*, 35 Cal.4th 797, 809 (2005).

2          The Court agrees with Defendant that Plaintiff's Complaint fails to allege sufficient facts

3    supporting a theory of delayed discovery—that is, facts which show that despite Plaintiff's

4    diligent investigation, Plaintiff could not reasonably discover facts supporting his fraud claim

5    within the statutory timeframe. *Fox*, 35 Cal.4th at 809. Plaintiff does not allege, for instance,

6    whether the loan documents were in his possession at any time between the closing of his loan in

7    2004 and the discovery of the alleged fraud in 2011. Plaintiff does not explain, if he did have

8    possession of the loan application since 2004, why he waited long to review the documents.

9    Plaintiff merely alleges that he reviewed the loan application after he received Defendant's loan

10   history statement dated September 14, 2011. Compl. ¶ 36. This is insufficient.

11         Plaintiff's fraud claim is dismissed with leave to amend facts supporting the theory of

12   delayed discovery. Plaintiff's fraud claim may relate solely to the allegation that Defendants

13   changed the amount of his Total Assets and Net Worth. As discussed below, whether Plaintiff

14   sufficiently pleads several other claims depends on whether he can allege facts supporting

15   application of the delayed discovery doctrine.

16         **B.     California Civil Code § 2923.5**

17         California Civil Code § 2923.5 was enacted in 2008 in response to the mortgage crisis.

18   *Mabry v. Superior Court*, 185 Cal. App. 4th 208, 219 (2010). It requires a mortgage servicer to

19   take certain procedural steps before recording a notice of default. *See* Cal. Civ. Code § 2923.5(a).

20   For instance, a mortgage servicer must make initial contact with the mortgagor before recording a

21   notice of default. *Id*. § 2923.5(a)(1)(A). If a mortgagor has submitted a "complete application"

22   for loan modification, the mortgage service may not record a notice of default "until the borrower

23   has been provided with a written determination by the mortgage servicer regarding that borrower's

24   eligibility for the requested loan modification." *Id*. § 2924.18(a)(1); *see* § 2923.5(a)(1)(A). A

25   "complete application" is defined as "when a borrower has supplied the mortgage servicer with all

26   documents required by the mortgage servicer within the reasonable timeframes specified by the

27   mortgage servicer." *Id*. § 2924.18(d).

28

United States District Court
Northern District of California

1     Plaintiff alleges that he submitted his first loan modification application on July 3, 2009.

2   Compl. ¶¶ 19, 73.  On several occasions, Bank of America acknowledged receipt of his

3   application and requested further information.  While Plaintiff was told during a phone call on

4   January 5, 2010 that his application had been denied, Plaintiff worked with the Bank of America

5   representative to correct erroneous information that had been entered into the computer system

6   and reactivate his application.  *Id.* ¶ 24.  Plaintiff never received written communication that his

7   loan application had been denied.  In March of 2010, Plaintiff was informed that his application

8   had been "tentatively approved."  *Id.* ¶ 25.  Plaintiff received notification later in 2010 indicating

9   that his application was being considered, and in early 2011, was reassured that if his application

10  had been denied, then he would have received written confirmation.  *Id.* ¶¶ 27-28.

11    Despite complying with all of Defendant's requests for further information, Plaintiff never

12  received any written notification indicating that his application for loan modification had been

13  approved or denied.  On May 17, 2013, four days after the notice of default was recorded, Plaintiff

14  called Bank of America to inquire about his application and was told that Bank of America had no

15  record of Plaintiff ever having submitted an application for loan modification.  Defendant

16  apparently found the loan application after this phone call, because Plaintiff received a letter from

17  Bank of America dated May 23, 2013 which purports to inform Plaintiff that he was "determined

18  to be ineligible for a modification based upon the information [he] provided and [Bank of

19  America] closed the application."  *Id.* ¶ 43.

20    Defendant does not specifically address Plaintiff's claim under § 2923.5, but rather

21  assumes that Plaintiff fails to state a claim under § 2923.5 for the same reasons he fails to state a

22  claim for wrongful foreclosure.  Specifically, Defendant argues that both claims fail because (1)

23  Plaintiff has failed to allege tender, (2) Plaintiff does not allege any facts showing that he suffered

24  any prejudice, and (3) Plaintiff does not specify how the Notice of Default violates § 2923.5.

25    Defendant's arguments are meritless when applied to Plaintiff's § 2923.5 claim.

26  Defendant has cited no authority for the proposition that a plaintiff must allege tender or show

27  prejudice to maintain a cause of action predicated on a violation of § 2923.5.  In fact, "tender is

28  not required where a plaintiff alleges a violation of California Civil Code § 2923.5, because, as

12

one California appellate court has stated, '[t]he whole point of section 2923.5 is to create a new, even if limited right, to be contacted about the possibility of alternatives to full payment of arrearages.  It would be contradictory to thwart the very operation of the statute if enforcement were predicated on full tender.'"  *Lester v. J.P. Morgan Chase Bank*, 926 F.Supp.2d 1081, 1093 (N.D. Cal. 2013) (citing *Mabry*, 185 Cal.App.4th at 225); *see also Perez v. Am. Home Mortgage Servicing, Inc.*, No. 12–00932, 2012 WL 1413300, at *5 (N.D. Cal. Apr. 23, 2012) ("Contrary to defendants' contention, a borrower need not tender the full amount of indebtedness to be entitled to her rights under Section 2923.5.").

Moreover, Plaintiff does not purport to base his § 2923.5 claim on any defect in the Notice of Default, as Defendant assumes, but rather upon the specific violation of § 2923.5(a)(1)(A) for Defendant's alleged recording of the Notice of Default prior informing Plaintiff that his loan modification application had been rejected.

The motion to dismiss the § 2923.5 claim is denied.  While Plaintiff states a claim under California Civil Code § 2923.5, the Court notes that the only relief under § 2923.5 is postponement of the foreclosure sale so that Defendant may comply with the statute.  *Mabry*, 185 Cal.App.4th at 214.  Even if Defendant failed to comply with § 2923.5, this Court has no power to compel Bank of America to modify Plaintiff's loan or otherwise offer the relief he desires based upon noncompliance with § 2923.5.  *See id.*

## C.     Wrongful Foreclosure

Plaintiff alleges that the foreclosure proceeding should be stopped because Defendant's alleged fraud—which rendered the residential mortgage agreement invalid, as well as other misconduct.  Compl. ¶ 55.  With respect to the other conduct, Plaintiff specifically alleges that Defendant's notice of default was defective and in violation of California Civil Code §§ 2924 and 2923.5, and therefore has no legal effect, and further alleges that the amount stated as due and owing in the notice of default is incorrect because it contains incorrect interest rate adjustments, incorrect tax impound accounts, and misapplied payments.  *Id.* ¶¶ 56-57.  Plaintiff also alleges that Defendant overcharged Plaintiff for interest on an overvalued property, and thus improperly overstated his debt.  *Id.*

13

1    Defendant argues that Plaintiff fails to state a claim for wrongful foreclosure because

2    Plaintiff has failed to allege that he is willing and able to tender the amount owed on the loan, and

3    therefore, cannot challenge the foreclosure proceeding.  Defendant also argues that Plaintiff cannot

4    base his fraud claim on allegations relating to loan origination.  Furthermore, Defendant contends

5    that Plaintiff's allegations relating to the alleged deficiencies in the notice of default do not

6    support halting the foreclosure proceedings because Plaintiff has not alleged any prejudice

7    resulting from such deficiencies.  Defendant also alleges that Plaintiff fails to specify how the

8    notice of default violates §§ 2924 and 2923.5.

9    The Court agrees that Plaintiff's allegation relating to the alleged deficiencies in the notice

10   of default do not support a claim for wrongful foreclosure.  As noted above, the only relief under §

11   2923.5 is postponement of the foreclosure sale so that Defendant may comply with the statute.

12   *Mabry*, 185 Cal.App.4th at 214.  Plaintiff also fails to allege any other violation of § 2924.

13   Moreover, Plaintiff's allegations relating to the overvalued property and overstated interest

14   are meritless.  Plaintiff does not allege any facts showing that he did not freely agree to an

15   adjustable interest rate.  Documents that Plaintiff freely signed do not provide a basis to challenge

16   foreclosure proceedings.

17   Assuming the truth of Plaintiff's allegation relating to Defendant's alteration of his Total

18   Assets and Net Worth, Plaintiff could possibly proceed on a theory of fraud in the execution,

19   which would render the mortgage void.  Under California law, if "the fraud goes to the inception

20   or execution of the agreement, so that the promisor is deceived as to the nature of his act, and

21   actually does not know what he is signing, … mutual assent is lacking, *and the contract is void.*"

22   *Rosenthal v. Great W. Fin. Sec. Corp.*, 14 Cal.4th 394, 415 (1996).  If this is the case, then

23   Defendants arguments relating to Plaintiff's failure to allege tender are without merit.  "[W]here a

24   sale is void, rather than simply voidable, tender is not required.  *Tamburri v. Suntrust Mortgage,*

25   *Inc.*, C-11-2899 EMC, 2011 WL 6294472 (N.D. Cal. Dec. 15, 2011) (citing Miller & Starr

26   California Real Estate 3d § 10:212 ("When the sale is totally void, a tender usually is not

27   required.")); *see also Lester v. J.P. Morgan Chase Bank*, 926 F. Supp. 2d 1081, 1093 (N.D. Cal.

28   2013).

United States District Court
Northern District of California

1    Nevertheless, for the reasons explained above, Plaintiff's fraud claim is insufficiently pled,

2    as Plaintiff fails to state sufficient facts supporting application of the delayed discovery doctrine.

3    Because Plaintiff's wrongful foreclosure claim depends entirely on Plaintiff's fraud claim, this

4    claim is also dismissed with leave to amend.

5    **D.    Intentional Infliction of Emotional Distress ("IIED")**

6    Under California law, the elements of an IIED claim are: (1) extreme and outrageous

7    conduct by the defendant with the intention of causing, or reckless disregard of the probability of

8    causing, emotional distress; (2) the plaintiff's suffering severe or extreme emotional distress; and

9    (3) actual and proximate causation of the emotional distress by the defendant's outrageous

10   conduct.  *Cervantez v. J.C. Penney Co.,* 24 Cal.3d 579, 593 (1979).  To be considered

11   "outrageous," conduct must be so extreme as to exceed all bounds of conduct usually tolerated in a

12   civilized community.  *Id.*

13   Plaintiff alleges that Defendant's conduct renders it liable for IIED.  Specifically, Plaintiff

14   alleges that Defendant engaged in extreme and outrageous conduct by failing to explain the loan

15   terms or provide accurate disclosures such that Plaintiff was aware of the risks involved, by

16   making false promises that Plaintiff could refinance the loan and new loan products would be

17   available in the future, and by modifying the amount of Plaintiff's Total Assets and Net Worth on

18   the loan application so Plaintiff would qualify for a loan Defendant knew Plaintiff could not

19   afford.  *See* Compl. ¶¶ 82-95.  Plaintiff alleges that such conduct caused him severe emotional

20   distress.  *Id.* ¶ 96.

21   Defendant argues that Plaintiff's IIED claim fails for two reasons.  First, Defendant argues

22   the IIED claim is time-barred, as it is subject to a one-year statute of limitations, and Plaintiff

23   complains of conduct which occurred in 2004.  Second, Defendant also argues that Plaintiff fails

24   to state an IIED claim because he only states a conclusory allegation for having suffered severe

25   emotional distress.

26   Defendant incorrectly asserts that IIED claims are subject to a one-year statute of

27   limitations.  "Causes of action for assault, battery and intentional infliction of emotional distress

28   are governed by the two-year statute of limitations set forth in Code of Civil Procedure section

United States District Court
Northern District of California

15

335.1." *Pugliese v. Superior Court*, 146 Cal.App.4th 1444, 1450 (2007); Cal. Civ. Proc. Code § 335.1. Nevertheless, the Court agrees that Plaintiff's IIED claim is time-barred. The facts giving rise to Plaintiff's IIED claim are the same facts that give rise to Plaintiff's claim for fraud.[2] Because Plaintiff's fraud claim is untimely as currently pled, Plaintiff's IIED claim is untimely as well. The timeliness of the IIED claim depends on whether Plaintiff can sufficiently allege facts supporting application of the delayed discovery doctrine.

Defendant also argues that Plaintiff fails to state an IIED claim because he only states a conclusory allegation for having suffered severe emotional distress. The Court disagrees. Plaintiff alleges that Defendant's "extreme and outrageous conduct caused Plaintiff severe emotional distress." Compl. ¶ 96. In his request for damages on the IIED claim, Plaintiff adds that he "is entitled to actual damages including [for]… severe emotional distress, loss of appetite, frustration, fear, anger, helplessness, nervousness, anxiety, sleeplessness, sadness, and depression…." *Id.* ¶ 97; *see also id.* ¶ 104 (alleging the same in his claim for negligent infliction of emotional distress). These allegations are sufficient.

Because Plaintiff's IIED is not timely as currently pled, this claim is dismissed with leave to amend.

### E. Negligent Infliction of Emotional Distress ("NEID")

Under California law, a plaintiff may seek damages for serious emotional distress arising from negligence; that is, the breach of a duty owed to the plaintiff that is "assumed by the defendant or imposed on the defendant as a matter of law, or that arises out of a relationship between the two." *Burgess v. Superior Court,* 2 Cal.4th 1064, 1073 (1992). "[T]he *negligent* causing of emotional distress is not an independent tort, but the tort of *negligence.*" *Id.* at 1072. In light of Plaintiff's *pro se* status, the Court construes Plaintiff's claim for NEID as a claim for

---

[2] To the extent Plaintiff does not base his IIED claim on Defendant's alleged modification of his Total Assets and Net Worth, the Court finds that Plaintiff has failed to plead "extreme and outrageous" conduct as a matter of law. It is not extreme and outrageous for Defendant to fail to inform Plaintiff of the risks involved in signing the loan, or to tell Plaintiff that he could refinance and that future loan products would be available in the future.

1   professional negligence for which he requests damages for the resulting emotional distress caused

2   by such negligence.

3        Defendant argues this claim is time-barred for the same reasons why the IIED claim is

4   time-barred.  "A cause of action for professional negligence is generally governed by the two-year

5   statute of limitations under Code of Civil Procedure section 339."  *Thomson v. Canyon*, 198 Cal.

6   App. 4th 594, 606 (2011) (stating that § 339.1 "has been consistently applied to a range of

7   professional negligence actions").  The Court finds that this claim is untimely for the same reasons

8   discussed above.  The Court further finds the Plaintiff may amend his allegation to cure the

9   untimeliness of his negligence claim if he cures the timelines of his fraud claim as discussed

10  above.

11       Defendant also argues that Plaintiff's claim fails because Plaintiff fails to plead facts

12  showing that Defendant owed Plaintiff any duty.  Plaintiff alleges that Defendant owed him a

13  duty, but "[t]he existence of a legal duty to use reasonable care in a particular factual situation is a

14  question of law for the court to decide."  *Vazquez v. Residential Invs., Inc.*, 118 Cal.App.4th 269,

15  278 (2004).  As a general rule, under California law, "a financial institution owes no duty of care

16  to a borrower when the institution's involvement in the loan transaction does not exceed the scope

17  of its conventional role as a mere lender of money."  *Nymark v. Heart Fed. Sav. & Loan Ass'n*,

18  231 Cal.App.3d 1089, 1095-96 (1991) (citations omitted).  Courts have held that this rule is

19  applicable to loan servicers as well.  *See Tsien v. Wells Fargo Home Mortgage*, 2010 WL

20  2198290, at *5 (N.D. Cal. May 28, 2010).

21       In California, the test for determining whether a financial institution exceeded its role as

22  money lender and thus owes a duty of care to a borrower-client involves "the balancing of various

23  factors, among which are (1) the extent to which the transaction was intended to affect the

24  plaintiff, (2) the foreseeability of harm to him, (3) the degree of certainty that the plaintiff suffered

25  injury, (4) the closeness of the connection between the defendant's conduct and the injury

26  suffered, (5) the moral blame attached to the defendant's conduct, and (6) the policy of preventing

27  future harm."  *Nymark*, 231 Cal. App. 3d at 1098.

28       Aside from Plaintiff's conclusory assertion that Defendant owed him a legal duty as a

United States District Court
Northern District of California

17

result of their "special relationship," Plaintiff has not alleged facts showing that Defendant exceeded its conventional role as a loan servicer of their mortgage. *See* Compl. ¶ 103. Therefore, Plaintiff's allegations do not plausibly establish that Defendant owed him a duty of care.

Accordingly, this claims is dismissed with leave to amend for Plaintiff to add allegations which demonstrate the timeliness of this claim and that Defendant owed Plaintiff a legal duty.

### F.    California Business and Professions Code §§ 17200 *et seq*. ("UCL")

The UCL prohibits "unfair competition," which is defined as any "unlawful, unfair or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200. A claim may be brought under the UCL "by a person who has suffered injury in fact and has lost money or property as a result of unfair competition." Cal. Bus. & Prof. Code § 17204. Therefore, to establish standing under the UCL a plaintiff must "(1) establish a loss or deprivation of money sufficient to qualify as injury in fact, i.e., *economic injury*, and (2) show that the economic injury was the result of, i.e., *caused by*, the unfair business practice … that is the gravamen of the claim." *Lawther v. OneWest Bank, FSB*, 2012 WL 298110, at *23 (N.D. Cal. Feb. 1, 2012) (quoting *Kwikset Corp.*, 51 Cal.4th 310, 337 (2011)).

A plaintiff may establish a violation of § 17200 under any one of three prongs. To state a cause of action based on an "unlawful" business act or practice under the UCL, a plaintiff must allege facts sufficient to show a violation of some underlying law. *People v. McKale*, 25 Cal.3d 626, 635 (1979). A "fraudulent" business act or practice is one in which members of the public are likely to be deceived. *Weinstat v. Dentsply Intern., Inc.*, 180 Cal.App. 4th 1213, 1223 n.8 (2010) (citations omitted). "'Fraudulent,' as used in the statute, does not refer to the common law tort of fraud but only requires a showing that members of the public 'are likely to be deceived.'" *Olsen v. Breeze*, 48 Cal.App.4th 608, 618 (1996). UCL claims premised on fraudulent conduct trigger the heightened pleading standard of Rule 9(b) of the Federal Rules of Civil Procedure. *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009).

Finally, while there is disagreement among California courts regarding the definition of "unfair" business practices, three tests have been applied, as the court in *Phipps v. Wells Fargo* explains:

1
2
3
4

In consumer cases, such as this, the California Supreme Court has not established a definitive test to determine whether a business practice is unfair. *Drum v. San Fernando Valley Bar Ass'n*, 182 Cal.App.4th 247, 256, 106 Cal.Rptr.3d 46 (2010). A split of authority has developed among the California Courts of Appeal, which have applied three tests for unfairness in consumer cases. *Drum*, 182 Cal.App.4th at 256, 106 Cal.Rptr.3d 46.

5
6
7
8
9
10
11

The test applied in one line of cases requires "that the public policy which is a predicate to a consumer unfair competition action under the 'unfair' prong of the UCL must be tethered to specific constitutional, statutory, or regulatory provisions." *Drum*, 182 Cal.App.4th at 256, 106 Cal.Rptr.3d 46 (citing *Bardin v. Daimlerchrysler Corp.*, 136 Cal.App.4th 1255, 1260–1261, 39 Cal.Rptr.3d 634 (2006); *Davis v. Ford Motor Credit Co.*, 179 Cal.App.4th at 581, 595–596, 101 Cal.Rptr.3d 697 (2009); *Gregory v. Albertson's Inc.*, 104 Cal.App.4th 845, 854, 128 Cal.Rptr.2d 389 (2002).
. . .

12
13
14
15
16

A second line of cases applies a test to determine whether the alleged business practice "is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers and requires the court to weigh the utility of the defendant's conduct against the gravity of the harm to the alleged victim." *Drum*, 182 Cal.App.4th at 257, 106 Cal.Rptr.3d 46 (citing *Bardin*, 136 Cal.App.4th at 1260, 39 Cal.Rptr.3d 634; *Davis*, 179 Cal.App.4th at 594–595, 101 Cal.Rptr.3d 697)).
. . .

17
18
19
20
21
22

The test applied in a third line of cases draws on the definition of "unfair" in section 5 of the Federal Trade Commission Act (15 U.S.C. § 45, subd. (n)), and requires that "(1) the consumer injury must be substantial; (2) the injury must not be outweighed by any countervailing benefits to consumers or competition; and (3) it must be an injury that consumers themselves could not reasonably have avoided." *Drum*, 182 Cal.App.4th at 257, 106 Cal.Rptr.3d 46 (citing *Davis*, 179 Cal.App.4th 597–598, 101 Cal.Rptr.3d 697; *Camacho v. Automobile Club of Southern California*, 142 Cal.App.4th 1394, 1403, 48 Cal.Rptr.3d 770 (2006)).

23

*Phipps v. Wells Fargo*, No. 10-2025, 2011 WL 302803, at *16 (E.D. Cal., Jan.27, 2011).

24
25
26
27
28

While Plaintiff incorporates all prior allegations in his Complaint in support of his UCL claim, and includes an allegation that Defendant committed actual fraud in violation of California Civil Code § 1572, Plaintiff does not specifically allege Defendant's secret modification of his Total Assets and Net Worth on his loan application as a basis for his UCL claim. Construing the UCL claim liberally to include this fraud which is alleged elsewhere in the Complaint, the UCL

United States District Court
Northern District of California

1   claim would depend on whether Plaintiff cures his fraud claim in an amended complaint.  As

2   discussed above, Plaintiff must plead facts supporting application of the delayed discovery

3   doctrine to cure his fraud claim.

4           Plaintiff bases his UCL claim on other conduct that Plaintiff alleges is unlawful, fraudulent

5   and unfair.  Specifically, Plaintiff alleges that Defendant undertook an unfair practice by

6   "induc[ing him] into accepting a loan that he did not qualify for nor could [he] actually afford."

7   Compl. ¶ 61.  Plaintiff also alleges that Defendant committed fraud within the meaning of the

8   UCL because Bank of America "advised the Plaintiff that the loan was appropriate for the

9   Plaintiff, but clearly it was not," and "failed to disclose to the Plaintiff the risks involved once the

10  interest rate begins to adjust and if the Plaintiff was not able to refinance."  *Id*. ¶ 63.  Plaintiff also

11  alleges unfair practice based on Defendant's violation of the California Financial Code §§ 4970-

12  4979.8.  *Id*. ¶ 64.   Further, Plaintiff alleges that Defendant engaged in "wrongful practice of

13  granting loans to borrowers who were not actually qualified and the practice of fraudulently

14  inflating the assessed value of properties that increased the prices of homes in general and have

15  specifically caused Plaintiff to pay significantly more than the fair market value of his home."  *Id*.

16  ¶ 66.

17          Defendant argues that Plaintiff fails to state a claim based on the UCL for three reasons:

18  (1) it is time-barred; (2) Plaintiff lacks standing to bring the claim; and (3) Plaintiff fails to allege

19  any unlawful, fraudulent or unfair conduct under the UCL.  To the extent Plaintiff's UCL claim is

20  not based on Defendant's modification of his loan application, the Court agrees.

21          First, claims under the UCL are subject to a four-year statute of limitations.  *See* Cal. Bus.

22  & Prof. Code § 17208.  The foregoing allegations relate to Defendant's representations at the time

23  of loan origination in 2004.  Without any additional allegations showing why the statute of

24  limitations should be tolled, Plaintiff's UCL claim is time-barred.

25          Second, Plaintiff has failed to plead facts sufficient to show that he has standing to bring a

26  claim.  As noted above, to establish standing under the UCL, a plaintiff must "(1) establish a loss

27  or deprivation of money sufficient to qualify as injury in fact, i.e., *economic injury*, and (2) show

28  that the economic injury was the result of, i.e., *caused by*, the unfair business practice … that is the

20

1    gravamen of the claim." *Lawther*, 2012 WL 298110, at *23 (quoting *Kwikset Corp.*, 51 Cal.4th at

2    337).  Plaintiff's allegations do not show that Plaintiff suffered any economic injury as a result of

3    Defendant's alleged unfair business practices.

4         Finally, Plaintiff's allegations do not state a plausible claim that Defendant acted

5    unlawfully, fraudulently, or unfairly, as these terms have been interpreted.  None of Plaintiff's

6    allegations supporting the UCL claim show that Defendant's conduct was unlawful or that

7    Defendant engaged in conduct likely to deceived the public.  Plaintiff certainly does not plead

8    facts sufficient to constitute fraud under the UCL with particularity under Rule 9(b).  *Kearns*, 567

9    F.3d at 1125.  Plaintiff's allegations also do not show that Defendant's conduct was unfair under

10   any of the three tests noted above.

11        The UCL claim is dismissed with leave to amend.  If Plaintiff cures the timeliness of his

12   fraud claim, the Court will find that Plaintiff sufficiently pleads a UCL claim as well.

13        **G.      Real Estate Settlement Procedures Act**

14        Under the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2605(e), a

15   borrower may send a Qualified Written Request ("QWR") to a mortgage servicer, which triggers

16   certain obligations of the servicer.  In particular, mortgage servicers are required, within thirty

17   days of receiving a QWR from a borrower, to "make appropriate corrections in the account of the

18   borrower, including the crediting of any late charges or penalties, and transmit to the borrower a

19   written notification of such correction[.]  12 U.S.C. § 2605(e)(2)(A).  In addition, after

20   investigating the borrower's inquiry but also within thirty days, the servicer must provide "a

21   written explanation or clarification" that includes, *inter alia*: either "a statement of the reasons for

22   which the servicer believes the account of the borrower is correct as determined by the servicer" or

23   "information requested by the borrower or an explanation why the information requested is

24   unavailable or cannot be obtained by the servicer[.]" 12 U.S.C. § 2605(e)(2)(B)(i) and (C)(i).

25   Furthermore, RESPA places a moratorium on the servicer's ability to contact credit reporting

26   agencies for sixty days following the receipt of a QWR. 12 U.S.C. § 2605(e)(3).

27        Plaintiff alleges that in response to several discrepancies regarding the past amount due on

28   the account statements provided by Defendant, Plaintiff submitted a QWR on June 25, 2011.

United States District Court
Northern District of California

Compl. ¶ 112.  Defendant responded to the QWR on July 12, 2011, but Plaintiff alleges the response was deficient.  For instance, Defendant did not address the discrepancies on Plaintiff's account statements, and thus failed to correct Plaintiff's account as required by § 2605(e)(2)(A).  Defendant also failed to provide Plaintiff with all of the documents requested in the QWR, and failed, as required by § 2605(e)(2)(C)(i), to explain why such documents were unavailable.  Defendant also failed to provide a statement of reasons why Defendant believed Plaintiff's account to be correct.  *See id.* § 2605(e)(2)(B)(i).

According to the Complaint, Defendant also failed to refrain from reporting Plaintiff's unpaid payments to the credit reporting agencies ("CRAs") within sixty days of receiving the QWR, as required by RESPA, § 2605(e)(3).  *Id.* ¶ 122.  Specifically, even though Plaintiff mailed his QWR on July 25, 2011, Defendant allegedly reported Plaintiff's overdue account information to the CRAs in August of 2011.  *Id.*

Defendant argues that Plaintiff fails to state a claim under RESPA because Plaintiff has not pled that he suffered any injury as a result of the RESPA violations.  RESPA provides that "[w]hoever fails to comply with this section shall be liable to the borrower … [for] *any actual damages* to the borrower as a result of the failure…." 12 U.S.C. § 2605(f)(1)(A) (emphasis added).  While $2000 in statutory damages are also available as "additional damages," *see id*. § 2605(f)(1)(B), courts have interpreted § 2605(f) to require plaintiffs to, "at a minimum, also allege that the breach resulted in actual damages." *Allen v. United Fin. Mortgage Corp.*, 660 F. Supp. 2d 1089, 1097 (N.D. Cal. 2009).  Moreover, any injury must be "a result of the failure" to comply with RESPA.  *Id*. § 2605(f)(1)(A).

Plaintiff argues that "any amount claimed by Defendants that exceed the true amount would constitute damages to Plaintiff."  Opp. at 11.  Plaintiff is incorrect.  Without any allegation that Plaintiff in fact paid any amount in excess of what he owed due to Defendant's noncompliance with RESPA's provisions, Plaintiff has suffered no injury.  Accordingly, this claim is dismissed with leave to amend to plead an actual injury as a result of the RESPA violations.

//

//

**H.    Conversion**

Under California law, a claim for conversion has three elements: (1) ownership or right to possession of property; (2) wrongful disposition of the property right of another; and (3) damages. *See G.S. Rasmussen & Assoc., Inc. v. Kalitta Flying Serv., Inc.*, 958 F.2d 896, 906 (9th Cir. 1992).

Plaintiff alleges conversion based on Defendant's setting of "an unjustly high monthly payment by artificially inflating the value of the property to fraudulently justify a larger mortgage." Compl. ¶ 126.  Plaintiff alleges that "[b]y raising the monthly payment rate, Defendants extracted from Plaintiff a higher amount than Plaintiff legitimately should have paid." *Id.* ¶ 127.  Plaintiff also alleges that in violation of Defendant's own policies, Defendant applied his "extra payments" to the interest on the loan instead of the principal, thus converting the funds for Defendant's own use and benefit.

Defendant argues that Plaintiff fails to state a claim for conversion because he fails to identify "a specific, definite sum capable of identification."  Motion at 15 (quoting *Michelson v. Hamada*, 29 Cal.App.4th 1566, 1589 (1996)).  The Court does not find that Plaintiff's conversion claim should be dismissed for this reason.  First, Defendant cites no authority showing that Plaintiff must allege a certain amount of money that was converted at the pleading stage. *Michelson* was decided after the trial judge refused to let a conversion claim go to the jury.  *See Michelson*, 29 Cal.App.4th at 1589.  Second, Plaintiff's inability to identify a certain sum which has been converted may be reasonable in light of the fact Defendant mailed several account statements to Plaintiff with inconsistent past due amounts, and has refused to provide any accounting to fix the discrepancies when requested by Plaintiff.

Nevertheless, Plaintiff fails to state a claim for conversion for another reason—the allocation of loan payments freely made to interest on a loan as opposed to the principal of the loan cannot be the basis for a conversion claim.  *Reyes v. Wells Fargo Bank, N.A.*, C-10-01667 JCS, 2011 WL 30759 (N.D. Cal. Jan. 3, 2011) (holding that money paid under a prior agreement cannot support a claim for damages) (citing *Newgent v. Wells Fargo Bank, N.A.*, No. 09-1525 WQH, 2010 WL 761236 (S.D. Cal. Mar. 2, 2010) (dismissing a conversion claim because "[a]ccepting payment a Plaintiff owes on a delinquent mortgage cannot be the basis of a

United States District Court
Northern District of California

conversion claim against a lender.")).  A claim for conversion requires that the plaintiff had ownership or right to possession of the funds.  *G.S. Rasmussen*, 958 F.2d at 906.  Assuming the loan is not void, Plaintiff had a contractual obligation to make payments on the loan.  Plaintiff freely made such payments, thus relinquishing his possessory right to the funds.

Moreover, absent a specific agreement to the contrary, a lender may freely allocate payments to interest rather than principal.  The Seventh Circuit has stated that "this practice comports with the federal common-law rule known as the United States Rule."  *Chicago Truck Drivers v. El Paso Co.*, 525 F.3d 591, 604 (7th Cir. 2008).  "The rule that payment is first applied to accrued interest 'applies in the absence of a clearly expressed intention by the parties to allocate payments in some other way,' and it 'does not permit the debtor unilaterally to allocate payments to principal rather than interest.'"  *Id.* (quoting *S. Natural Gas Co. v. Pursue Energy,* 781 F.2d 1079, 1088 n. 11 (5th Cir. 1986) (citations omitted)).  Plaintiff has not pointed to any contractual provision or other authority to show that Defendant was not allowed to allocate Plaintiff's payments to interest.

This claim is dismissed with leave to amend.

### I.      Fair Credit Reporting Act

Congress enacted the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681–1681x, in 1970 "to ensure fair and accurate credit reporting, promote efficiency in the banking system, and protect consumer privacy."  *Gorman v. Wolpoff & Abramson, LLP*, 584 F.3d 1147, 1153 (9th Cir. 2009) (quoting *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 52 (2007)).  In addition to imposing duties on credit reporting agencies ("CRAs"), "the FCRA imposes some duties on the sources that provide credit information to CRAs, called 'furnishers' in the statute."  *Gorman*, 584 F.3d at 1153.

Section 1681s-2(a) requires furnishers "to provide accurate information."  15 U.S.C. § 1681s-2(a).  Specifically, subsection (a) prohibits furnishers from reporting information with actual knowledge of errors, requires furnishers to correct and update information, and requires furnishers to provide notice of disputes and closed accounts, among other requirements.  15 U.S.C. § 1681s-2(a)(1)-(3).  The information is "inaccurate or incomplete" within the meaning of the statute if it is "patently incorrect, or because it is misleading in such a way and to such an extent

United States District Court
Northern District of California

that it can be expected to adversely affect credit decisions." *Gorman*, 584 F.3d at 1163.

Section 1681s-2(b) establishes the duties of furnishers after receiving notice of a dispute. 15 U.S.C. § 1681s-2(b).  Upon receiving notice of a dispute from a CRA, the furnisher shall (1) conduct an investigation of the disputed information; (2) review all relevant information provided by the agency; (3) report the results of the investigation to the CRA; (4) if the results of the investigation reveal that the information is incomplete or inaccurate, report those results to all other CRAs to which the person furnished information; and (5) if an item of information disputed by a consumer is found to be inaccurate or incomplete or cannot be verified after reinvestigation, for purposes of reporting to a consumer reporting agency only, as appropriate, modify, delete, or permanently block reporting of that item of information.  15 U.S.C. § 1681s-2(b)(1).

The FCRA confers a private right of action upon consumers and allows them to sue a furnisher of credit information if such furnisher willfully or negligently fails to comply with any of the duties enumerated in section 1681s-2(b).  *See Gorman*, 584 F.3d at 1154; 15 U.S.C. §§ 1681n, 1681o.  A furnisher's duties "arise only after the furnisher receives notice of dispute from a CRA." *Gorman*, 584 F.3d at 1154.  Duties imposed on furnishers under subsection (a) are enforceable only by federal or state agencies.  *Gorman*, 584 F.3d at 1154.

When a violation of section 1681s-2(b) occurs, a plaintiff may base his allegations on negligent noncompliance (§ 1681o) and/or willful noncompliance (§ 1681n) of section 1681s-2(b).  Under section 1681o, a person who negligently violates the FCRA is liable in an amount equal to the sum of "any actual damages sustained by the consumer as a result of that violation" plus costs and attorney's fees.  Some courts have thus required a plaintiff to plead actual damages in order to allege an FCRA claim based on a negligent violation.  *See Johnson v. CGR Servs., Inc.*, 2005 WL 991770, at *2 (N.D. Ill. Apr. 7, 2005) ("The FCRA does not explicitly limit the 'actual damages' recoverable under the statute and Plaintiff does not need to plead her damages with heightened particularity.  However, the Complaint needs at least to give the other party some notice as to what her actual damages could possibly be."); *Martin v. Asset Acceptance, LLC*, 2012 WL 3042524, at *2-3 (N.D. Ill. July 25, 2012); *Engel v. Scully & Scully, Inc.*, 279 F.R.D. 117, 125-126 (S.D.N.Y. 2011).  Under section 1681n, a person who "willfully"

25

1  violates the FCRA may seek either actual damages or "damages of not less than $100 and not

2  more than $1,000," as well as punitive damages and reasonable attorney's fees.  15 U.S.C. §

3  1681n(a)(1)(A).  Because a plaintiff may recover actual or statutory damages under section

4  1681n, that section does not require a plaintiff to allege actual damages.  *See Martin*, 2012 WL

5  3042524, at *4.

6      Plaintiff alleges that Bank of America violated the FCRA for two reasons.  First, Plaintiff

7  alleges that after Defendant's representative instructed Plaintiff to become delinquent on his

8  mortgage payments in order to qualify for a loan modification:

9          Defendants have knowingly and repeatedly reported erroneous and
          incomplete information to the credit reporting agencies both by
10          reporting derogatory information when Defendants knew the
          delinquent status of Plaintiff's account was in response to
11          Defendant's instructions to Plaintiff, and by failing to include any
          information in the reports indicating the delinquent status was to
12          fulfill the stated requirement for loan modification.

13  Compl. ¶ 158.  Plaintiff alleges this was a violation of § 1681s-2(a), which requires accurate credit

14  reporting.

15      Second, Plaintiff alleges that after being informed that Plaintiff disputed his debt, Bank of

16  America violated the FCRA "by failing to provide a notice of dispute when furnishing derogatory

17  information to the credit reporting agencies."  *Id*. ¶ 159.  Plaintiff alleges that he notified

18  Defendant three or more times in writing that he disputed his debt.  *Id*.  Plaintiff further alleges

19  that he had "sent letters of dispute to the three major credit reporting agencies, and been informed

20  that after an investigation that the creditor has attested that the information is accurate and

21  complete."  *Id*. ¶ 160.

22      Defendant argues that Plaintiff cannot state a FCRA claim based upon violations of §

23  1681s-2(a) because there is no private cause of action for such violations.  The Court agrees.  As

24  discussed above, duties imposed on furnishers under this subsection are enforceable only by

25  federal or state agencies.  *Gorman*, 584 F.3d at 1154; *see also* 15 U.S.C. § 1681s-2(d) (limiting

26  enforcement to federal and state agencies).  Thus, to the extent that Plaintiff bases his FCRA claim

27  upon violations of § 1681s-2(a), the claim is dismissed with prejudice.

28

United States District Court
Northern District of California

United States District Court
Northern District of California

1    While Plaintiff may premise his FCRA claim on Defendant's violations of § 1681s-2(b),

2  the duties imposed by subsection (b) on furnishers to reinvestigate an individual's credit

3  information is triggered "only after the furnisher receives notice of dispute from a CRA."

4  *Gorman*, 584 F.3d at 1154.  Defendant argues that Plaintiff failed to allege that reinvestigation

5  procedures were ever triggered by any CRA providing notice to Bank of America that Plaintiff

6  disputed his debt.  The Court disagrees.

7    While Plaintiff does not specifically allege that the CRAs sent Bank of America a notice of

8  dispute, this is implied in Plaintiff's allegation that after submitting notice of the dispute to the

9  CRAs, the CRAs informed Plaintiff that "the creditor has attested that the information is accurate

10 and complete."  Complaint ¶ 160.  Plaintiff may have omitted this specific allegation for lack of

11 personal knowledge, but it is only reasonable to infer that if the CRAs discussed with Bank of

12 America the accuracy of Plaintiff's debt, they also informed Bank of America that Plaintiff

13 disputed such debt.  In any event, *pro se* complaints are to be construed liberally.  *Hughes*, 449

14 U.S. at 9.  Therefore, the Court finds that Plaintiff sufficiently pled that the CRAs sent a notice of

15 dispute to Bank of America, triggering its obligations under § 1681s-2(b).

16   The final question is whether Plaintiff sufficiently alleges that Bank of America failed to

17 comply with its obligations under subsection (b).  Defendant argues that, based on Plaintiff's

18 allegation that the CRAs confirmed to Plaintiff "that Defendants had conducted an investigation

19 and stated the reports were accurate," Complaint ¶ 161, "Plaintiff concedes that [Bank of America

20 did conduct an investigation, thus fulfilling its obligation under the FCRA," Motion at 13.  The

21 Court disagrees.  The Ninth Circuit has held that an investigation under § 1681s-2(b) must be a

22 "reasonable" investigation as determined by "whether the furnisher's procedures were reasonable

23 in light of what it learned about the nature of the dispute from the description in the CRA's notice

24 of dispute."  *Gorman*, 584 F.3d at 1155-57.

25   Nevertheless, the claim must fail as currently pled because Plaintiff fails to allege that

26 Defendant did not conduct a reasonable investigation.  Plaintiff merely alleges that he reported the

27 dispute to the CRAs, that his credit report never showed that the debt was disputed, and that

28

1    Defendant's conduct was willful.  *See* Compl. ¶ 161.  Accordingly, the FCRA claim—to the extent

2    it is based on § 1681s-2(b)—is dismissed with leave to amend.

3        **J.    Defamation − Libel**[3]

4        Under California law, libel is defined as "a false and unprivileged publication ... which

5    exposes any person to hatred, contempt, ridicule, or obloquy, or which causes him to be shunned

6    or avoided, or which has a tendency to injure him in his occupation."  Cal. Civ. Code § 45.

7    Plaintiff's libel claim is based on Defendant's reporting to the CRAs that Plaintiff was in default

8    on his loan, when Defendant's representative instructed Plaintiff to become delinquent on his

9    payments in order to qualify for a loan modification.  Compl. ¶ 106.  Plaintiff also alleges that

10   Defendant falsely reported that he owes the debt because, due to Defendant's fraud during loan

11   origination, the loan is invalid.  *Id.*

12       Defendant argues that Plaintiff's claim for libel is preempted by the FCRA.  The Ninth

13   Circuit considered this issue in *Gorman*, and recognized that provisions of the FCRA are in

14   apparent conflict: "Although § 1681t(b)(1)(F)[4] appears to preempt all state law claims based on a

15   creditor's responsibilities under § 1681s-2, § 1681h(e) suggests that defamation claims can

16   proceed against creditors as long as the plaintiff alleges falsity and malice."  *Gorman*, 584 F.3d at

17   1166.  Section 1681h(e) grants immunity to furnishers for "any action or proceeding in the nature

18   of defamation, invasion of privacy, or negligence with respect to the reporting of information

19   against any consumer reporting agency, … except as to false information furnished with malice or

20   willful intent to injure such consumer."  15 U.S.C. § 1681h(e).  The Court ultimately did not decide

21

22       [3] There are two types of defamation: libel and slander.  Cal. Civ. Code § 44.  Plaintiff does
     not specify whether his defamation claim is based on libel or slander.  *Pro se* complaints are to be
23   construed liberally.  *Bernhardt*, 339 F.3d at 925.  The Court assumes that Plaintiff asserts a claim
     for libel because his allegations clearly do not support a claim for slander.  *See* Cal. Civ. Code §
24   46 (defining slander as "a false and unprivileged publication, orally uttered" for limited subject
     matters).
25       [4] Section 1681t governs the FCRA's "[r]elation to State laws" and provides, in relevant
26   part: "No requirement or prohibition may be imposed under the laws of any State  … (1) with
     respect to any subject matter regulated under … (F) section 1681s-2 of this title, relating to the
27   responsibilities of persons who furnish information to consumer reporting agencies, except that
     this paragraph shall not apply … with respect to section 1785.25(a) of the California Civil
28   Code[,]" which prohibits furnishers from providing "incomplete or inaccurate" information to the
     CRAs.  15 U.S.C. § 1681t(b); Cal. Civ. Code § 1785.25.

1   the issue of preemption, and instead affirmed the district court's grant of summary judgment in

2   favor of the creditor for lack of evidence supporting malice. *Gorman*, 584 F.3d at 1167.

3         First, Plaintiff cannot base his libel claim on his allegation that a Bank of America

4   representative instructed Plaintiff to become delinquent on his loan, and then assured him that the

5   delinquency would not be reported to the CRAs.  As noted above, libel requires publication of a

6   false statement.  Even if Bank of America told Plaintiff to become delinquent, and even if Bank of

7   America falsely told Plaintiff that they would not report the delinquency, that does not mean that

8   Bank of America's *reporting of the delinquency* was false.  Despite Bank of America's

9   instructions and false representations to Plaintiff, there was no false statement if the debt truly

10  existed.

11        A false statement is always required as an element of a libel claim.  Plaintiff alleges that

12  Defendant's representation of the existence of any debt was a false statement because the loan was

13  invalid due to Defendant's fraud during loan origination.  Thus, Plaintiff's claim for libel is

14  dependent on his claim for fraud.  As described above, Plaintiff's claim for fraud is insufficiently

15  pled.  Therefore, Plaintiff's claim for libel depends on whether Plaintiff, in an amended complaint,

16  pleads sufficient facts to support his claim for fraud.

17        Moreover, the Court agrees with Defendant that Plaintiff's allegation of malice is

18  conclusory, and therefore, insufficiently pled.  Plaintiff has pled no facts to show that Defendant's

19  reporting of the debt to the CRAs was "malicious," meaning that "the publication was made (1)

20  with knowledge that it was false or (2) with reckless disregard for its truth, the latter supported by

21  a showing that the defendant in fact entertained serious doubts as to the truth of the publication."

22  *See Pham v. Bank of Am., N.A.*, No. 10-2613, 2010 WL 3184263, at *15-16 (N.D. Cal. Aug. 11,

23  2010) (dismissing libel claim because the plaintiff "provides no facts to support these general and

24  conclusory" allegations of malice) (citing *Gorman*, 552 F.3d at 1028).  Rather, Plaintiff only

25  makes a conclusory allegation that Defendant's "actions were intentional, oppressive, and with

26  fraud or malice in conscious disregard of Plaintiff's rights[.]"  Compl. ¶ 108.

27        Accordingly, this claim is dismissed with leave to amend.

28  //

United States District Court
Northern District of California

1

**K.       Rosenthal Fair Debt Collection Practices Act**

2

The Rosenthal Act is intended to "to prohibit debt collectors from engaging in unfair or

3

deceptive acts or practices in the collection of consumer debts and to require debtors to act fairly

4

in entering into and honoring such debts."  Cal. Civ. Code § 1788.1 (legislative findings and

5

purpose).  Plaintiff alleges violations of §§ 1788.11 (d) and (e) of the Rosenthal Act, which

6

provide that "[n]o debt collector shall collect or attempt to collect a consumer debt by means of

7

the following practices:

8

> (d) Causing a telephone to ring repeatedly or continuously to annoy
> the person called; or

9

> (e) Communicating, by telephone or in person, with the debtor with
> such frequency as to be unreasonable and to constitute an

10

> harassment to the debtor under the circumstances.

11

Cal. Civ. Code § 1788.11.

12

Plaintiff alleges that he wrote three separate letters to Bank of America informing them

13

that they were not allowed to contact Plaintiff by telephone, and also so informed Bank of

14

America's representatives verbally when answering some of their phone calls.  Compl. ¶ 168.

15

Plaintiff also informed Defendants that calling him at work was harassment and threatening of

16

Plaintiff's job.  *Id.*  Plaintiff alleges that despite his warnings, Defendant called Plaintiff at home

17

and at work.  Plaintiff alleges that "on some days, seven or more calls were placed by Defendants

18

to Plaintiff's residence, with additional calls placed to Plaintiff's place of work."  *Id.* ¶ 169.

19

Plaintiff alleges hat on "at least three occasions … Defendants caused Plaintiff's phone to ring

20

before 8AM."  *Id.*

21

Defendant argues that Plaintiff's claim under the Rosenthal Act fails because his

22

conclusory allegations that Bank of America is a "debt collector" as defined by the Act, collecting

23

on a "debt" as defined under the Act, are insufficient.  First, the Court notes that Plaintiff alleges

24

that Defendant is a "creditor" as defined by the Rosenthal Act, but does not allege that Defendant

25

is a "debt collector" subject to the prohibits of the Rosenthal Act.  *See* Compl. ¶ 166.  Plaintiff

26

must amend this allegation in any amended complaint.

27

Under the Rosenthal Act, a "debt collector" is defined as "any person who, in the ordinary

28

course of business, regularly, on behalf of himself or herself or others, engages in debt collection."

United States District Court
Northern District of California

Cal. Civ. Code § 1788.2(c).  The term "consumer debt" is defined by the Act as "money, property or their equivalent, due or owing or alleged to be due or owing from a natural person by reason of a consumer credit transaction."  Cal. Civ. Code § 1788.2(f).  A "consumer credit transaction" is "a transaction between a natural person and another person in which property, services or money is acquired on credit by that natural person from such other person primarily for personal, family, or household purposes."  Cal. Civ. Code § 1788.2(e).  As a number of courts have recognized, the definition of "debt collector" is broader under the Rosenthal Act than it is under the FDCPA, as the latter excludes creditors collecting on their own debts.  *See Herrera v. LCS Financial Services Corp.*, 2009 WL 5062192, at *2 (N.D. Cal. Dec. 22, 2009) (Henderson, J.) (noting that plaintiff brought a claim under the Rosenthal Act against both defendants but asserted federal debt collection practices claim against only one defendant because "[t]he federal definition [of debt collectors] excludes creditors collecting on their own debts, 15 U.S.C. § 1692a(6), an exclusion that does not appear in the state statute, Cal. Civ. Code § 1788.2(c)"); *Izenberg v. ETS Services, LLC*, 589 F. Supp. 2d 1193, 1199 (C.D. Cal. 2008) ("The definition of 'debt collector' in the state statute is broader than that contained in the FDCPA, however").  Thus, a mortgage servicer may be a "debt collector" under the Rosenthal Act even if it is the original lender, whereas, such an entity would be excluded from the definition of debt collector under the federal act.  *See Herrera*, 2009 WL 5062192, at *2.

Defendant also argues that Plaintiff does not allege any facts to show that Defendant engaged in conduct which could be considered "harassing."  The Court disagrees.  Plaintiff alleges that "on some days, seven or more calls were placed by Defendants to Plaintiff's residence, with additional calls placed to Plaintiff's place of work," and that on "at least three occasions … Defendants caused Plaintiff's phone to ring before 8AM."  Compl. ¶ 169.  "The practice of calling a debtor outside of his or her home—by calling the debtor's workplace or the homes of a debtor's family and friends—or calling at inconvenient hours, can … constitute harassment."  *Arteaga v. Asset Acceptance, LLC*, 733 F. Supp. 2d 1218, 1228 (E.D. Cal. 2010) (listing cases).  In *Fox v. Citicorp Credit Services, Inc.,* the Ninth Circuit found that a debtor stated a claim under section 1692d of the federal Fair Debt Collection Practices Act—the section governing harassment—in

31

part because the plaintiff testified that the debt collector's agent called her at work after she twice requested that she not be phoned there.  15 F.3d 1507, 1516 (9th Cir. 1994).  The Court finds that Plaintiff sufficiently alleges that Defendant engaged in harassment.

Nevertheless, Plaintiff does not allege the topic of such phone calls.  Contact by a lender or loan servicer for the purpose of restructuring payments on a debt is not "collection of a debt" when the lender or servicer does not demand payment for past amounts owed and the contact is merely informational.  *See Bailey v. Security Nat'l Servicing Corp.*, 154 F.3d 384, 388–89 (7th Cir. 1998); *see also Walcker v. SN Commercial, LLC*, 286 Fed. Appx. 455, 457 (9th Cir. 2008) (unpublished). Thus, to the extent Bank of America was calling not to collect on a debt, but rather to restructure Plaintiff's loan, Plaintiff does not state a claim under the Rosenthal Act.

Accordingly, this claim is dismissed with leave to amend.  Plaintiff must allege that Defendant is a "debt collector" as well as the topic of the phone calls to sufficient state a claim under the Rosenthal Act.

V.    CONCLUSION

For the following reasons, Defendant's Motion to Dismiss is GRANTED in part and DENIED in part.  Any amended complaint shall be filed within thirty (30) days of this Order.

**IT IS SO ORDERED**.

Dated: October 28, 2013

JOSEPH C. SPERO
United States Magistrate Judge